**MUSICK, PEELER & GARRETT LLP**
ATTORNEYS AT LAW
2801 TOWNSGATE ROAD, SUITE 200
WESTLAKE VILLAGE, CALIFORNIA 91361
TELEPHONE: 805-418-3100
FACSIMILE 805-418-3101

Barry C. Groveman (State Bar No. 082239)
*b.groveman@mpglaw.com*
Gregory J. Patterson (State Bar No. 136665)
*g.patterson@mpglaw.com*
K. Ryan Hiete (State Bar No. 204614)
*r.hiete@mpglaw.com*
Adam D. Wieder (State Bar No. 239369)
*a.wieder@mpglaw.com*

David R. Holmquist (State Bar No. 179872)
*David.holmquist@lausd.net*
Jay F. Golida (State Bar No. 183691)
*Jay.golida@lausd.net*
Los Angeles Unified School District
355 South Grand Avenue, Suite 1157
Los Angeles, California 90071
Telephone: (213) 241-1808

Attorneys for Plaintiff Los Angeles Unified School District

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES UNIFIED SCHOOL DISTRICT,<br><br>      Plaintiff,<br><br>vs.<br><br>UNITED ALLOYS , INC., a California Corporation; UNITED ALLOYS & METALS, INC., a California Corporation; FLASK CHEMICAL CORPORATION, a Delaware Corporation; RON DONN, an individual, and DOES 1 through 10,<br><br>      Defendants. | CASE NO. CV-12-05033 (CAS) (RZx)<br><br>[PROPOSED] SECOND AMENDED COMPLAINT FOR:<br>1) Response Costs Under CERCLA 42 U.S.C. 9607<br>2) Declaratory Relief Under CERCLA<br>3) Carpenter-Presley-Tanner Hazardous Substances Act (Cal. Health & Safety Code Sections 25300-25395.45);<br>4) Declaratory Relief Under Carpenter-Presley-Tanner Hazardous Substances Act (Cal. Health & Safety Code Sections 25300-25395.45);<br>5) Continuing Trespass;<br>6) Continuing Private Nuisance;<br>7) Continuing Public Nuisance;<br>8) Negligence;<br>9) Negligence Per Se<br>10) Equitable Indemnity;<br>11) Declaratory Judgment;<br>12) Injunctive Relief;<br>13) Cleanup Order Under RCRA 42 U.S.C. Section 6972;<br>**Demand For Jury Trial** |

## **INTRODUCTION**

1.      Plaintiff Los Angeles Unified School District ("LAUSD") owns and operates the Los Angeles Academy Middle School, which is located at 644 East 56th Street, Los Angeles, California ("School Site").  By this action, LAUSD seeks to recover damages suffered and costs incurred and continuing to be incurred in response to contamination migrating onto the School Site from the Defendants' property and facility located at 900 East Slauson Avenue, Los Angeles California (the "United Alloys Property").  LAUSD also seeks injunctive relief requiring Defendants to abate the contamination and prevent further migration onto the School Site.

2.      LAUSD has been conducting investigation and remediation of the School Site under a Consent Order with the Department of Toxic Substances Control ("DTSC").

3.      The purpose of the investigation and cleanup was to identify and remove contamination existing at and beneath the School Site, primarily consisting of volatile organic compounds ("VOCs"), including Trichloroethylene ("TCE").

4.      The School Site hosts young students, teachers, administrators, and parents, many of whom spend more than eight hours a day at the School Site.  The contamination migrating from the United Alloys Property is, therefore, of particular concern because of the safety risks that it poses to the school's sensitive population.

## **THE PARTIES**

5.      LAUSD is, and at all times herein mentioned, was, a school district and a political subdivision of the State of California.

6.      Upon information and belief, Defendant United Alloys, Inc. is, and at all times relevant hereto was, a corporation organized and existing under the laws of the State of California.  LAUSD is informed and believes and based thereon alleges that Defendant United Alloys, Inc. owns or owned and/or operates or operated an industrial facility at the United Alloys Property, in the State of California.

7.     Upon information and belief, Defendant United Alloys & Metals, Inc. is and was at all times relevant hereto a corporation organized, existing, and doing business under the laws of the State of California.  LAUSD is informed and believes and based thereon alleges that Defendant United Alloys & Metals, Inc. is now operating the facility on the United Alloys Property.

8.     Upon information and belief, Defendant Flask Chemical Corporation was a corporation organized under the laws of the State of Delaware that operated and did business in the State of California from 1972 until 1994.  LAUSD is informed and believes and based thereon alleges that Defendant Flask Chemical Corporation leased and operated the United Alloys Property from 1972 to 1994.

9.     Upon information and belief, Defendant Ron Donn is an individual who resides in Los Angeles County, California, and is the President of United Alloys, Inc.  (Defendants United Alloys, Inc., United Alloys & Metals, Inc., Flask Chemical Corporation, and Ron Donn shall be collectively referred to as "Defendants.")

10.     LAUSD is ignorant of the true names and capacities of the defendants sued as Does 1 through 10, inclusive, and therefore sues these defendants by these fictitious names.  LAUSD will amend this complaint to allege their true names and capacities when ascertained.  LAUSD believes that each of the fictitiously named defendants, directly and/or through predecessors-in-interest, has owned and/or conducted operations at facilities located near the School Site from which hazardous substances have been released that have contributed to soil and groundwater contamination at the School Site.  The real names of Does 1 through 10, inclusive, are not known or ascertainable at this time because investigations to locate potentially responsible parties are ongoing.

## JURISDICTION AND VENUE

11.     This Court has original jurisdiction over this action pursuant to Section 113(b) of the Comprehensive Environmental Response, Compensation and Liability

Act of 1980, as amended ("CERCLA"), 42 U.S.C. § 9613(b), and as a federal question pursuant to 28 U.S.C. § 1331.  This Court has jurisdiction over LAUSD's state law claims as pendant, ancillary and supplemental to LAUSD's federal law claims pursuant to 28 U.S.C. § 1367(a).

12.     Venue is proper in the United States District Court for the State of California because the release of hazardous substances and the damage caused thereby occurred in this District, the School Site and the United Alloys Property lie within this District, and each of the Defendants is either located or engaged in substantial activities in the District.

## GENERAL ALLEGATIONS

13.     During the period from approximately 1930 to 1990, the School Site was occupied by various businesses, including a World War II defense plant, a furniture and refrigeration manufacturing facility with warehouses, a machine shop, and a gas station.  LAUSD acquired the School Site in 1991 by eminent domain.  In 1995, LAUSD began construction of Jefferson Middle School on the Property and school operations began in 1997.  The school is now called Los Angeles Academy Middle School.  Currently, there are nine (9) buildings on the northern portion of the School Site, and sports fields on the southern portion.  The School Site is surrounded by light industrial, commercial and residential uses.

14.     LAUSD has been conducting site assessment and remediation of the School Site under the jurisdiction of the DTSC since August of 2000.  LAUSD has incurred costs to conduct the site assessment activities and remediation and has incurred damages specific to it because it owns the School Site.

15.     Under the oversight of the DTSC, LAUSD operated a soil vapor extraction system ("SVE") designed to remove the VOCs from August 2002 to September 2005.  The purpose of the SVE that was installed at the School Site was to remove VOCs from the soils beneath the vicinity of the School Site.  In 2008 the DTSC approved the shutdown of the vapor extraction system.

16.     Although substantial reductions of VOCs on the School Site occurred initially through operation of the SVE system, LAUSD has been and continues to be unable to achieve cleanup goals at all locations because of vapor migration of VOCs from the United Alloys Property, and, in fact, the trend of TCE and PCE concentrations in certain locations is increasing because of the vapor migration.  As a result, to date LAUSD has incurred and continues to incur substantial costs because VOC contamination caused by releases from the United Alloys Property has been and continues to migrate onto the School Site, and now threatens substantial harm to the School Site and potential risks to its occupants, which must be addressed now.

17.     LAUSD is informed and believes that the United Alloys Property was operated by lessees from approximately 1969 to 1979.  From approximately 1972 to 1979, Flask Chemical Corporation ("Flask") operated a chemical distribution facility at the United Alloys Property, conducting chemical storage, processing, sales and distribution during that period.  This facility included the bulk storage of chemical in aboveground storage tanks ("ASTs") and underground storage tanks ("USTs").  Flask used ASTs and USTs to contain and distribute aromatic and chlorinated hydrocarbons, including PCE and TCE.  The general locations of the USTs and ASTs were beneath what is now a structural canopy located in the southwestern portion of the United Alloys Property.  Flask had 18 USTs, each 5,000 gallons, that contained hydrocarbon solvents, alcohol, denatured alcohol, acetone, methyl ethyl ketone, and napthas.  During Flask's operations they received chemical and solvent shipments from railroad cars and trucks.  Flask's employees were responsible for offloading chemicals from the rail cars on the railroad spur and transporting the chemicals onto the United Alloys Property.  LAUSD is informed and believes that during Flask's operations on the United Alloys Property, there were several accidental spills of chemicals.

18.     LAUSD is informed and believes and thereon alleges that United

1 Alloys, Inc. purchased the United Alloys Property in or about 1979. LAUSD is
2 informed and believes that in March of 1980, eighteen 5000 gallon flammable
3 solvent underground storage tanks ("USTs") were removed from the United Alloys
4 Property; however, no records are available documenting the USTs' removal and
5 proper closure.

6     19.    LAUSD is informed and believes that since 1979, United Alloys, Inc.
7 and its successors have conducted activities at the United Alloys Property, which
8 include receiving, sorting, stripping, crushing, processing, and resale of high grade
9 metal alloys such as zirconium, nickel, titanium, cobalt, and copper. Defendants'
10 activities, for a period of time, included the use of a PCE vapor degreaser, and the
11 use of various concentrated acids to test metals. Currently, Defendants continue to
12 use the United Alloys Property as a recycling center for high grade alloy metals,
13 including the receiving and sorting of high grade alloy metals. The United Alloys
14 Property is located less than 500 feet from the School Site.

15     20.    LAUSD is informed and believes and based thereon alleges that as
16 early as 1992, United Alloys, Inc. was aware that the United Alloys Property may be
17 contaminated. That year, United Alloys, Inc. retained an environmental engineer,
18 Green Environmental, to conduct a Phase I site assessment of the United Alloys
19 Property. Green Environmental's investigation found PCE and TCE contamination
20 in the soil at multiple locations throughout the United Alloys Property. Green
21 Environmental recommended that an additional investigation be conducted at the
22 United Alloys Property.

23     21.    LAUSD is informed and believes that the following year, in 1993,
24 Western Environmental Engineering Company performed a Phase II investigation at
25 the United Alloys Property. This investigation confirmed the presence of VOCs and
26 other chemicals in sub-surface soil of the United Alloys Property. Soil vapor
27 surveys conducted in 1994 also confirmed the presence of PCE, TCE and other
28 contaminants in sub-surface soil beneath the United Alloys Property. Subsequent

1  investigations also confirmed the presence of VOCs, including TCE and PCE in

2  groundwater at and near the United Alloys Property.

3      22.    During the time that United Alloys, Inc. operated the United Alloys

4  Property, Ron Donn was its President and was involved in the day to day operations

5  of United Alloys.  In 1992, Ron Donn became aware of the contamination on the

6  United Alloys Property.  Mr. Donn knew that the contamination on the United

7  Alloys Property extended beyond the bounds of the United Alloys Property in all

8  directions.  LAUSD is informed and believes that Mr. Donn was responsible for

9  managing and directing United Alloys, Inc.'s operations related to the

10  contamination, and was in charge of United Alloys Inc.'s decision-making on how

11  to address the contamination, if at all.  Mr. Donn has admitted that it was in his best

12  interest to avoid remediating the groundwater contaminated by releases from the

13  United Alloys Property because of the costs that such remediation would entail.

14      23.    LAUSD is informed and believes that on or about June 3, 2002 United

15  Alloys & Metals, Inc. purchased all of United Alloys, Inc.'s assets, including but not

16  limited to, all of the equipment on the United Alloys Property, which was previously

17  owned by United Alloys, Inc.  LAUSD is further informed and believes that United

18  Alloys, Inc. continues to own the United Alloys Property but leases it to United

19  Alloys & Metals, Inc.  United Alloys & Metals, Inc. is the current operator of the

20  United Alloys Property, and has been operating that facility since June 2002.  Since

21  the Asset Purchase Agreement, the business has remained essentially the same, but

22  the name of the entity operating the facility was changed to United Alloys & Metals,

23  Inc.

24      24.    LAUSD is informed and believes that both before and after the Asset

25  Purchase Agreement, Defendants United Alloys, Inc, United Alloys & Metals, Inc.,

26  and Ron Donn were aware that the United Alloys Property was contaminated and

27  that the contamination was migrating towards properties surrounding the United

28  Alloys Property, including the School Site, which is less than 500 feet away from

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

834926.1

7

1  the United Alloys Property.  Accordingly, on June 3, 2002, the same date they

2  entered into the Asset Purchase Agreement, United Alloys & Metals, Inc. and

3  United Alloys, Inc. entered into an Environmental Liability and General

4  Indemnification Agreement, under which United Alloys, Inc. agreed to, among other

5  things, conduct any and all continued or future investigation and/or remediation of

6  the contamination at the United Alloys Property.

7       25.    Also on June 3, 2002, United Alloys & Metals, Inc. and United Alloys,

8  Inc. entered into an Environmental Escrow Agreement.  Under this agreement,

9  United Alloys & Metals, Inc. placed $1,000,000 in an escrow account, which was

10  intended to address, among other things, the contamination at the United Alloys

11  Property.  Section (c) of the "Termination" clause in the Environmental Escrow

12  Agreement states, in pertinent part, as follows:

13       If this Agreement is still in effect on the earlier to occur of (i) the date when

14       Buyer receives a copy of a "no further action" letter issued to United Alloys,

15       Inc. by the Regional Quality Control Board of the County of Los Angeles,

16       California with respect to the property located at 900 East Slauson Avenue,

17       Los Angeles, California 90011 (the "Slauson Property") or (ii) the date when

18       United Alloys & Metals, Inc. vacates the Slauson Property (the "Expiration

19       Date"), and if the Escrow Agent has not received a Claim Notice on or prior

20       to such date (except with respect to Environmental Claims which have been

21       finally settled in accordance with Section 4), then the Escrow Agent shall

22       disburse to the Seller any and all amount remaining in the Environmental

23       Escrow Fund as of the Expiration Date upon receipt of a signed certificate

24       (the "Certificate") prepared by the Buyer …

25       26.    LAUSD is informed and believes that, to date, neither of the above-

26  mentioned conditions for disbursement of the funds in the Environmental Escrow

27  Account has occurred.  LAUSD is further informed and believes that from June 3,

28  2002 to May 19, 2010, neither United Alloys, Inc. nor Ron Donn used the money in

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

the Environmental Escrow Account to remediate the contamination at the United

Alloys Property.

27.    In an April 2010 bench trial before the Honorable Consuelo Marshall of the United States District Court for the Central District of California, United Alloys sought to recover from Flask Chemical the costs for remediating the contamination at the United Alloys Property.  On April 20, 2010,  during the course of  trial, Ron Donn testified, among other things, to the following facts:

    a.    Mr. Donn is the President of United Alloys, and was involved in its day-to-day operations;

    b.    Mr. Donn learned of the contamination at the United Alloys Property in 1992;

    c.    Mr. Donn knew that the contamination extended well beyond the bounds of the United Alloys Property in all directions; and

    d.    It was not in Mr. Donn's interest to remediate the groundwater contamination because of the cost involved.

28.    Less than one month after Mr. Donn's testimony, on  May 19, 2010, United Alloys & Metals, Inc. and United Alloys, Inc. entered into a Termination of Environmental Escrow Agreement.  Under this agreement, United Alloys, Inc. and United Alloys & Metals, Inc. terminated the Environmental Escrow Agreement and instructed the Escrow Agent to disburse to United Alloys, Inc. the money remaining in that account.  The agreement states that the escrow funds were released in exchange for an amendment to the lease between United Alloys, Inc. and United Alloys & Metals, Inc.: "To induce United to enter into the Lease Amendment, Buyer has agreed to terminate the Escrow Agreement and instruct Escrow Agent to pay and disburse to United the entire balance of the Environmental Escrow Fund."

29.    LAUSD is informed and believes and based thereon alleges that almost eight years after the Environmental Escrow Account was created, the account was terminated; the money in the account was returned to United Alloys, Inc.; and the

contamination was not remediated.  The money from the Environmental Escrow Account was then deposited in a bank account belonging to United Alloys, Inc. and/or Ron Donn.  LAUSD is further informed and believes that since May 19, 2010, Ron Donn has controlled the account in which the money previously held in the Environmental Escrow Account was deposited, and did not use those funds to remediate the contamination at the United Alloys Property.

30.     Despite confirming at least no later than 1994 that releases from the United Alloys Property had caused TCE and PCE contamination, none of the Defendants has started any actual on-site cleanup of the contamination.  The only cleanup work completed in the last 20 years was a 4-month pilot test of a soil vapor extraction system, which operated from approximately July to November 2009, but is no longer operating.

31.     Despite knowing of the contamination for many years, none of the Defendants have taken any substantive measures to address it.  During this time, each of the Defendants was or should have been aware of the contamination at the United Alloys Property, and that the contamination was migrating towards the School Site, which was occupied by teachers, students and staff, and was less than 500 feet from the United Alloys Property.  Yet Defendants ignored the migrating contamination and did nothing about it.  During this entire time, Defendants knew or should have known that the contamination and its continued migration towards the School Site posed a threat to the health and safety of the School Site's occupants.

32.     Defendants have a statutory obligation to remediate the contamination and control it from migrating from the United Alloys Property.  Other than the brief four-month pilot test in 2009, the Defendants have yet to implement a cleanup plan or take any proactive steps to arrest the plume from spreading to the School Site.

33.     LAUSD is informed and believes that in June 2010, while United Alloys & Metals, Inc. was the operator of the United Alloys Property, an industrial fire started in a machine that ground titanium into highly flammable flakes.  The

United Alloys Property erupted in flames in a fire so large that it required more than 200 firefighters to extinguish it. During the course of the firefighters' efforts to extinguish the blaze they used large volumes of water to fight the fire, which in turn caused numerous large explosions that ejected red hot pieces of titanium hundreds of feet into the air. Toxic fumes and runoff were released from the United Alloys Property, forcing schools in the area to "lock down" as a result of the noxious fumes released by the fire. Approximately 1,000 students at a nearby elementary school were confined to their classrooms for a day. A month later, fire engulfed another building at the United Alloys Property and ignited metal scraps, once again leading to explosions that sent firefighters flying and showered them with burning shrapnel. Seven people were injured. The Los Angeles Fire Department used astronomical amounts of water to put out these two fires at the United Alloys Property. LAUSD is informed and believes that some portion of the water used to control the 2010 fires at the United Alloys Property percolated through the soils beneath the site. This percolation of a large quantity of water through the contaminated soils will result in the further migration of contamination in groundwater. This additional contamination of the underlying groundwater will occur as that infiltrating firefighting water becomes contaminated as it moves through the contaminated soils and eventually mixes with the underlying groundwater. Once this additional contamination has migrated vertically to, and mixed with, the underlying groundwater, it will flow laterally towards the School Site. Defendants knew or should have known that a high volume of water would increase the mobility of the contamination migrating towards the School Site.

34. LAUSD has suffered damages and incurred substantial costs, and continues to suffer damages and incur costs, as a direct result of the migration of VOCs onto the School Site from the United Alloys Property, and Defendants' decades-long and continuing failure to clean up the contamination at the United Alloys Property.

35.     The migration of the PCE contamination in soil vapor from the United Alloys Property to the School Site has increased the costs of remediation at the School Site and extended the period of time required for operation of the SVE system.

## FIRST CLAIM FOR RELIEF

### Response Costs Under CERCLA, 42 U.S.C. §9607(a)

### (Against All Defendants and Does 1 through 10)

36.     LAUSD repeats the allegations contained in paragraphs 1 through 35 inclusive as though fully set forth herein.

37.     Each of the Defendants is a "person," as that term is defined in Section 101(21) of CERCLA, 42 U.S.C. §9601(21).

38.     The School Site and the United Alloys Property are "facilities," as that term is defined in Section 101(9) of CERCLA, 42 U.S.C. §9601 (9).

39.     Defendant United Alloys Inc. is the current "owner" and former "operator" of the United Alloys Property; Defendant Flask Chemical Corporation is a former "operator" of the United Alloys Property; Defendant Ron Donn is a former "operator" of the United Alloys Property; Defendant United Alloys & Metals, Inc. is the current "operator" of the United Alloys Property, at which a "release" of hazardous substances occurred, as those terms are defined in Section 101(20)(A) and (22) of CERCLA, 42 U.S.C. §§9601(20)(A), 22.

40.     Volatile organic compounds ("VOCs") are "hazardous substances," as these terms are defined in Section 101(14) of CERCLA, 42 U.S.C. §9601(14).

41.     As provided by 42 U.S.C. §9601(35)(A)(ii), LAUSD is a government entity that acquired the School Site through the exercise of eminent domain authority by condemnation after the disposal or placement of the hazardous substance on, in, or at the School Site.

42.     In connection with the releases described herein, LAUSD has incurred and will continue to incur necessary costs of response consistent with the NCP,

1  including but not limited to, investigating the scope and nature of the contamination,

2  testing soil and groundwater, and removing contaminated soil.

3      43.    As a direct result of the release and disposal of the hazardous

4  substances as alleged above, LAUSD has incurred response costs consistent with

5  NCP, and will continue to incur necessary response costs and monitoring costs in

6  the future.  The amount of these necessary costs is not precisely ascertainable at this

7  time and LAUSD makes claim according to proof at trial.

8      44.    Defendants, and each of them, are liable under 42 U.S.C. §9607

9  because Defendant United Alloys Inc. is the current "owner" and former "operator"

10  of the United Alloys Property; Defendant Flask Chemical Corporation is a former

11  "operator" of the United Alloys Property; Defendant Ron Donn is a former

12  "operator" of the United Alloys Property; and Defendant United Alloys & Metals,

13  Inc. is the current "operator" of the United Alloys Property,

14      45.    LAUSD is therefore entitled to recover from Defendants past, present

15  and future response costs, including attorneys' fees, interest and court costs pursuant

16  to CERCLA, including, but not limited to, 42 U.S.C. § 9607(a).

17  **SECOND CLAIM FOR RELIEF**

18  **Declaratory Relief Under CERCLA**

19  **(Against All Defendants and Does 1 through 10)**

20      46.    LAUSD repeats the allegations contained in paragraphs 1 through 45

21  inclusive as though fully set forth herein.

22      47.    An actual controversy exists between LAUSD on the one hand and the

23  Defendants on the other hand, regarding their respective rights and obligations

24  concerning necessary response costs under Section 107(a) of CERCLA, 42 U.S.C.

25  9607(a).

26      48.    LAUSD asserts that Defendants, as the current owners and current and

27  former operators of the United Alloys Property, are responsible for all necessary

28  response costs under Section 107(a) of CERCLA, 42 U.S.C. 9607(a).  LAUSD

MUSICK, PEELER
& GARRETT LLP
ATTORNEYS AT LAW

1   denies that it is responsible for the investigation, testing, removal, other remediation

2   or monitoring of the hazardous substances or the disposal of the contaminated soil

3   on the Contaminated Area.

4        49.    LAUSD desires a judicial determination of the rights and duties of

5   LAUSD, on the one hand, and the Defendants on the other, with respect to the

6   cleanup of the contamination at the School Site.

7   **THIRD CLAIM FOR RELIEF**

8   **Recovery of Response Costs and Damages Pursuant to Carpenter-Presley-**

9   **Tanner Hazardous Substances Act, California Health & Safety Code §§ 25300-**

10   **25395.45**

11   **(Against All Defendants and Does 1 through 10)**

12        50.    LAUSD repeats the allegations contained in paragraphs 1 through 49

13   inclusive as though fully set forth herein.

14        51.    LAUSD is a "person" as defined in the Carpenter-Presley-Tanner

15   Hazardous Substances Act, Health & Safety Code Section 25319.  LAUSD has

16   incurred and/or will continue to incur, substantial response costs to investigate the

17   nature and scope of the VOC contamination and remediate VOC contamination

18   migrating from the United Alloys Property to the School site.  All such response

19   costs have been necessary and consistent with the National Contingency Plan

20   ("NCP").

21        52.    Each of the Defendants is a "responsible party" within the meaning of

22   Health and Safety Code Section 25323.5.

23        53.    Health and Safety Code Section 25363(e) imposes liability on any

24   "responsible party" who is the owner or operator of a facility, was the owner or

25   operator of any facility at which such hazardous substances were disposed of,

26   arranged for the disposal of hazardous substances, or arranged with a transporter for

27   transport of disposal of hazardous substances owned or possessed by such persons

28   for the response costs incurred.

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

54.    The actions of the Defendants with regard to the disposal of hazardous substances at the United Alloys Property constitutes a release or threatened release of hazardous substances at a facility within the meaning of the Carpenter-Presley-Tanner Hazardous Substances Act.

55.    As a direct and proximate result of the releases or threatened releases of hazardous substances from United Alloys Property, LAUSD has incurred and will continue to incur response costs consistent with the NCP.

56.    As a direct and proximate result of Defendants' conduct, LAUSD is entitled to recover past, present and future response costs together with interest from the Defendants pursuant to Health and Safety Code Section 25363(e).

## FOURTH CLAIM FOR RELIEF

### Declaratory Relief Pursuant to Carpenter-Presley-Tanner Hazardous Substances Act, California Health & Safety Code §§ 25300-25395.45

### (Against All Defendants and Does 1 through 10)

57.    LAUSD repeats the allegations contained in paragraphs 1 through 56 inclusive as though fully set forth herein.

58.    An actual controversy exists between LAUSD on the one hand and the Defendants on the other hand, regarding their respective rights and obligations concerning necessary response costs under Health and Safety Code Section 25363(e).

59.    LAUSD asserts that each of the Defendants, as the current owner and/or operator of the United Alloys Property, is responsible for all necessary response costs incurred in connection with the investigation, testing, removal, and other remediation or monitoring of the hazardous substances on the School Site.

60.    LAUSD desires a judicial determination that the United Alloys Defendants, and each of them, are strictly liable to LAUSD for all such necessary costs.

61.    Such a declaration is necessary and appropriate at this time, although

1  due to the continuing nature of the Defendants' release, LAUSD anticipates that it
2  will likely incur future response costs and will likely be required to undertake future
3  response actions necessitated by the Defendants' release for which the Defendants
4  should be strictly liable.

## FIFTH CLAIM FOR RELIEF

### Continuing Trespass

### (Against All Defendants and Does 1 through 10)

8      62.    LAUSD repeats the allegations contained in paragraphs 1 through 61
9  inclusive as though fully set forth herein.

10      63.    LAUSD is informed and believes and based thereon alleges that at all
11  material times, Defendants allowed and permitted, and continue to allow and permit,
12  hazardous substances and other contaminants, located on the United Alloys
13  Property, to migrate into the soil and groundwater of the School Site.  Defendants
14  have no lawful right, authority or consent to dispose or cause the disposal of
15  hazardous substances, including the disposal of VOC contamination onto the School
16  Site.

17      64.    Defendants, by their wrongful disposal of pollutants onto the School
18  Site and their intentional and reckless failure to clean up the contamination, have
19  unlawfully interfered and continue to interfere with LAUSD's exercise of its rights
20  to use and enjoyment of the School Site.

21      65.    The trespass caused by the migration of the VOC Contamination from
22  United Alloys Property to the School Site can be abated at a reasonable cost.

23      66.    As an actual and proximate cause of Defendants' intentional and
24  unlawful trespass, LAUSD has incurred costs and suffered damages, and will
25  continue to incur costs and suffer damages, until the investigations and cleanup of
26  the School Site are complete and until the Defendants clean up the contamination
27  existing at the United Alloys Property and migrating from the United Alloys
28  Property.

67.     LAUSD is informed and believes, and on that basis alleges, that Defendants knew about the contamination at the United Alloys Property; they knew that the contamination was spreading to adjacent properties in all directions, including the School Site, which is less than 500 hundred feet away; they knew that the contamination consisted of VOCs that are known carcinogens; and they knew or should have known that there were children and school staff occupying the School Site daily, who could potentially be exposed to contaminants discharged, emanating, or flowing from the United Alloys Property.  Despite knowing all this for many years, Defendants delayed and avoided any cleanup of the contamination at the United Alloys Property.  In fact, Defendants United Alloys, Inc. and United Alloys & Metals created an environmental escrow account specifically for the purpose of remediating the contamination, yet after allowing the money to sit in the account for eight years, they released the funds to United Alloys, Inc., which never used the money to remediate the contamination.  Defendants' contamination of the United Alloys Property and subsequent maintenance of the aforementioned trespass conditions is and was the result of actions or omissions by Defendants that were malicious, fraudulent and/or oppressive.  LAUSD is, therefore, entitled to an award of punitive and exemplary damages against Defendants.

## SIXTH CLAIM FOR RELIEF

### Continuing Private Nuisance

### (Against All Defendants and Does 1 through 10)

68.     LAUSD repeats the allegations contained in paragraphs 1 through 67 inclusive as though fully set forth herein.

69.     LAUSD is informed and believes and based thereon alleges that at all material times, Defendants intentionally and recklessly allowed and permitted, and continue to allow and permit, hazardous substances and other contaminants, including petroleum, located on the United Alloys Property to migrate into the soil and groundwater on the School Site.  The VOC Contamination migrating from the

1  United Alloys Property to the School Site constitutes a continuing nuisance.  The

2  VOC Contamination has interfered, and continues to interfere, with LAUSD's use

3  and enjoyment of the School Site.

4        70.    The continuing nuisance caused by the migration of the VOC

5  Contamination from the United Alloys Property to the School Site can be abated at a

6  reasonable cost.

7        71.    As an actual and proximate cause of the continuing nuisance created by

8  the Defendants, LAUSD has incurred costs and suffered damages, and will continue

9  to incur costs and suffer damages, until the investigation and cleanup of the School

10  Site is complete.

11        72.    LAUSD is informed and believes, and on that basis alleges, that

12  Defendants knew about the contamination at the United Alloys Property; they knew

13  that the contamination was spreading to adjacent properties in all directions,

14  including the School Site, which is less than 500 hundred feet away; they knew that

15  the contamination consisted of VOCs that are known carcinogens; and they knew or

16  should have known that there were children and school staff occupying the School

17  Site daily, who could potentially be exposed to contaminants discharged, emanating,

18  or flowing from the United Alloys Property.  Despite knowing all this for many

19  years, Defendants delayed and avoided any cleanup of the contamination at the

20  United Alloys Property.  In fact, Defendants United Alloys and United Alloys &

21  Metals created an environmental escrow account specifically for the purpose of

22  remediating the contamination, yet after allowing the money to sit in the account for

23  eight years, they released the funds to United Alloys, Inc., which never used  the

24  money to remediate the contamination.  Defendants' contamination of the United

25  Alloys Property and subsequent maintenance of the aforementioned nuisance

26  conditions is and was the result of actions or omissions by Defendants that were

27  malicious, fraudulent and/or oppressive.  LAUSD is, therefore, entitled to an award

28  of punitive and exemplary damages against Defendants.

## SEVENTH CLAIM FOR RELIEF

### Continuing Public Nuisance

### (Against All Defendants and Does 1 through 10)

73.    LAUSD repeats the allegations contained in paragraphs 1 through 72 inclusive as though fully set forth herein.

74.    Groundwater within the State of California, including the groundwater underlying the School Site and the United Alloys Property, constitutes "waters of the state" pursuant to California Water Code §13050(e).

75.    The California Legislature has declared, as stated in California Water Code §13000, that "the people of the state have a primary interest in the conservation, control and utilization of water resources of the state, and that the quality of all waters of the state shall be protected for use and enjoyment by the people of the state."

76.    LAUSD is informed and believes and based thereon alleges that at all material times, the Defendants allowed and permitted, and continue to allow and permit, hazardous substances and other contaminants that had been released onto the United Alloys Property to migrate into the soil and groundwater on, adjacent to and underlying the School Site and other adjacent properties, and into the waters of the State of California.  These hazardous substances and other contaminants continue to migrate onto the School Site, adjacent properties, and the groundwater.

77.    The hazardous substances and contaminants are carcinogens, reproductive toxins and/or are otherwise highly toxic to plant and animal life, and their release into the soil and groundwater constitutes a public nuisance within the meaning of California Civil Code §§ 3479 and 3480.  The hazardous substances and contaminants have migrated, and are continuing to migrate, into the waters of the state and the environment and are damaging the public natural resources of the State of California.  Further, the hazardous substances and contaminants that have migrated onto the School Site have injured students, teachers, school administrators,

1  and the community at large by necessitating the use of taxpayers' funds for the

2  investigation, testing and environmental remediation of the School Site.

3      78.    While this public nuisance affects a considerable number of persons, it

4  has caused special injury to LAUSD because the hazardous substances and

5  contaminants that the Defendants allowed to migrate, continue to migrate, primarily

6  to the soil and groundwater on and underlying the School Site.  Further, LAUSD has

7  incurred costs and suffered damages in remediating the environmental conditions at

8  the School Site.  Additionally, the contamination has interfered with LAUSD's free

9  use of the School Site in that LAUSD can only operate a school on the School Site

10  so long as LAUSD takes such measures as DTSC requires and approves which will

11  prevent the continuing release from creating an unacceptable risk of harm to the

12  school's students, faculty and staff and to the environment.

13      79.    LAUSD is informed and believes and based thereon alleges that the

14  contamination caused by the nuisance can be abated at reasonable cost.

15      80.    As a direct and proximate result of the continuing nuisance maintained

16  by the Defendants, LAUSD has incurred costs and suffered damages in remediating

17  the environmental conditions at the School Site, and will continue to incur costs and

18  suffer damages until the environmental condition of the School Site has been fully

19  remediated and the migration of hazardous substances and other contaminants from

20  the United Alloys Property to the School Site has ceased.  LAUSD is therefore

21  entitled to an award of damages according to proof at trial and an order requiring the

22  Defendants to abate the nuisance in accordance with all applicable laws, regulations

23  and orders.

24      81.    LAUSD is informed and believes, and on that basis alleges, that

25  Defendants knew about the contamination at the United Alloys Property; they knew

26  that the contamination was spreading to adjacent properties in all directions, which

27  including the School Site, which is less than 500 hundred feet away; they knew that

28  the contamination consisted of VOCs that are known carcinogens; and they knew or

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

834926.1

[PROPOSED] SECOND AMENDED COMPLAINT

should have known that there were children and school staff occupying the School Site daily, who could potentially be exposed to contaminants discharged, emanating, or flowing from the United Alloys Property. Despite knowing all this for many years, Defendants delayed and avoided any cleanup of the contamination at the United Alloys Property. In fact, Defendants United Alloys and United Alloys & Metals created an environmental escrow account specifically for the purpose of remediating the contamination, yet after allowing the money to sit in the account for eight years, they released the funds to United Alloys, Inc., which never used the money to remediate the contamination. Defendants' contamination of the United Alloys Property and subsequent maintenance of the aforementioned nuisance conditions is and was the result of actions or omissions by Defendants that were malicious, fraudulent and/or oppressive. LAUSD is, therefore, entitled to an award of punitive and exemplary damages against Defendants.

<b><u>EIGHTH CLAIM FOR RELIEF</u></b>

<b>Negligence</b>

<b>(Against All Defendants and Does 1 through 10)</b>

82.    LAUSD repeats the allegations contained in paragraph 1 through 81 inclusive as though fully set forth herein.

83.    Defendants, and each of them, owe LAUSD a continuing duty to prevent the hazardous substances situated on the United Alloys Property from spilling onto and contaminating the School Site in a manner which caused LAUSD to sustain damages and losses.

84.    Defendants, and each of them, breached their duty to LAUSD and continue to breach their duty to LAUSD by negligently owning, maintaining, controlling, managing and operating the United Alloys Property so as to cause the hazardous substances situated on the United Alloys Property to spill onto and contaminate the School Site, and by intentionally and recklessly failing to timely clean up the contamination.

85.     Defendants, by failing to exercise reasonable care in the conduct of the ownership and operation of the United Alloys Property, and by their continuing failure to exercise reasonable care to abate the hazardous and dangerous conditions at that property, proximately caused and will continue to cause LAUSD the necessity to investigate, indentify, remove, and remediate the hazardous substances and other contaminants at the School Site and to incur significant response costs in undertaking each of these activities, unless and until the contamination is cleaned up.

86.     LAUSD has been damaged by the necessity to incur significant response costs and respond to Defendants' negligence in an amount as yet unknown for which LAUSD makes claim according to proof at trial.

87.     The damages and losses sustained by LAUSD were caused solely by Defendants' negligence, without any fault of LAUSD contributing thereto. Therefore, LAUSD is entitled to recover from the Defendants the full amount of its damages.

## NINTH CLAIM FOR RELIEF

### Negligence Per Se

### (Against All Defendants and Does 1 through 10)

88.     LAUSD repeats the allegations contained in paragraph 1 through 87 inclusive as though fully set forth herein.

89.     Defendants' failure and continued failure to date to exercise reasonable care in controlling the release of hazardous substances and other contaminants violates numerous state and federal statutes, rules and regulations, including but not limited to, California Health & Safety Code §§25189 and 25189.6, and California Water Code §§13271 and 13304.

90.     As a direct and proximate result of Defendants' failure to exercise reasonable care and continued failure to exercise reasonable care in controlling the release of hazardous substances and other contaminants at the United Alloys

Property and onto the School Site, the School Site has been contaminated, and continues to be contaminated by migration of the hazardous substances from the United Alloys Property.

91.     The purpose of the aforementioned statutes are to set a standard of care or conduct to protect LAUSD, students, faculty, school staff and others in their classes and their property and the environment from the type of improper activities engaged in by Defendants.  Therefore, Defendants' improper activities and violations constitute negligence per se.

92.     As a direct and proximate result of Defendants' negligence per se, LAUSD has suffered damages, including other consequential, incidental and general damages to be proven at trial.

## TENTH CLAIM FOR RELIEF

### Common Law Equitable Indemnity

### (Against All Defendants and Does 1 through 10)

93.     LAUSD repeats the allegations contained in paragraph 1 through 92 inclusive as though fully set forth herein.

94.     At DTSC's direction and as compelled by DTSC and the California Education Code, LAUSD conducted remedial activities and incurred response costs for which Defendants, and each of them, are primarily liable.

95.     Defendants, by failing to remediate the hazardous substances and other contaminants existing on the United Alloys Property and by permitting these hazardous substances and contaminants to migrate onto the School Site, are liable for the presence and release of the hazardous substances and other contaminants onto the School Site.

96.     Any liability or potential liability of LAUSD due to the presence of hazardous substances and other contaminants at the School Site is the sole and proximate result of the improper handling, use, storage, disposal and/or release by the Defendants of hazardous substances and other contaminants at the United Alloys

Property, as, due to such improper handling, use, storage, disposal and release, the hazardous substances and other contaminants migrated from the United Alloys Property to the School Site. Defendants' improper handling, use, storage, disposal and release of hazardous substances and other contaminants at the United Alloys Property gave rise to a duty on the part of the Defendants to investigate and remove or remedy the hazardous condition created by their conduct.

97.    Defendants, and each of them, have failed and continue to fail to recognize their equitable obligation to assume responsibility for the investigation, removal and/or remediation of the hazardous substances and hazardous wastes which have contaminated the School Site.

98.    As LAUSD has incurred costs as a consequence of the Defendants' improper handling, use, storage, disposal and release of hazardous substances and contaminants, LAUSD is entitled to be indemnified by the Defendants for all of LAUSD's past, present and future costs for the investigation, testing, removal and remediation of the hazardous substances and other contaminants at the School Site, including attorneys' fees, incurred in response to LAUSD's duty and obligations arising under state and federal law.

## ELEVENTH CLAIM FOR RELIEF

### Declaratory Judgment Under State Law

### (Against All Defendants and Does 1 through 10)

99.    LAUSD repeats the allegations contained in paragraph 1 through 98 inclusive as though fully set forth herein.

100.    LAUSD is informed and believes and based thereon alleges that an actual controversy has arisen and now exists between LAUSD and the Defendants in that LAUSD contends, upon information and belief, and the Defendants deny, that responsibility for the hazardous substances and other contaminants caused or permitted to come onto the School Site rests solely and entirely upon the Defendants.

101.   LAUSD has incurred and will continue to incur necessary response costs, including, but not limited to, investigatory, remedial and removal expenses, attorneys' fees, and interest, in remediating the School Site.

102.   LAUSD seeks a declaration of the rights and obligations of the parties, binding in any subsequent action or actions to recover necessary response costs and other damages incurred and to be incurred by LAUSD in connection with the releases, threatened releases, spills, disposals, discharges of hazardous substances and other contaminants that have and will pollute the School Site in the manner previously referenced.  Such declaration will prevent multiple, future actions to determine the rights and obligations of the parties.

## TWELFTH CLAIM FOR RELIEF

### Injunctive Relief Under State Law

### (Against All Defendants and Does 1 through 10)

103.   LAUSD repeats the allegations contained in paragraph 1 through 102 inclusive as though fully set forth herein.

104.   Since acquiring the United Alloys Property in or about 1979, the Defendants have wrongfully and unlawfully permitted hazardous substances and other contaminants to be released onto the United Alloys Property, which subsequently migrated onto the School Site and into the School Site's underlying groundwater.

105.   LAUSD hereby demands that the Defendants stop failing to properly remediate the hazardous substances and other contaminants contained on the United Alloys Property and stop allowing the hazardous substances and other contaminants contained thereon to be released onto the School Site and into the School Site's underlying groundwater.

106.   Defendants' wrongful conduct, unless and until enjoined and restrained by order of this Court, will cause great and irreparable harm to LAUSD, so long as hazardous substances and other contaminants remain on the United Alloys Property,

1   LAUSD's contractors, employees, agents, and the students, faculty and staff of

2   LAUSD's school, remain at risk of exposure to the hazardous substances and other

3   contaminants.

4       107.   LAUSD has no adequate remedy at law because, unless and until the

5   Defendants stop allowing the hazardous substances and other contaminants

6   contained thereon to be released onto School Site and into the School Site's

7   underlying groundwater, LAUSD cannot be assured the contamination has been

8   remediated to, and will remain at, a safe level.  This will result in further irreparable

9   harm to LAUSD.

10   **THIRTEENTH CLAIM FOR RELIEF**

11   **Cleanup Order Under RCRA, U.S. C. Section 6972**

12   **(Against All Defendants and Does 1 through 10)**

13       108.   LAUSD repeats the allegations contained in paragraph 1 through 107

14   inclusive as though fully set forth herein.

15       109.   Pursuant to RCRA, 42 U.S.C. Section 6972, in May 2012, LAUSD

16   provided notice to Defendants of LAUSD's intent to bring this suit against them.

17   Copies of LAUSD's notices are attached as Exhibit "A."

18       110.   This action against Defendants is brought for violation of Subtitle C

19   (Hazardous Waste Management) of RCRA 42 U.S.C. Section 6901, *et seq.*,

20   including Sections 6922 and 6924 and the applicable regulations thereunder.

21   LAUSD is informed and believes and on that basis alleges that the primary cause of

22   the releases of hazardous wastes and hazardous substances onto the School Site was

23   a result of violations of RCRA, 42 U.S.C. Section 6901, *et seq.*

24       111.   All or some of the contaminants and substances generated and released

25   by Defendants are specifically listed and designated as "hazardous wastes" within

26   the meaning of RCRA, 42 U.S.C. Section 6903 and 40 C.F.R. Part 261.31.

27       112.   LAUSD is informed and believes and based thereon alleges that the

28   hazardous waste contamination resulting from Defendants' releases of contaminants

onto the School Site presents an imminent and substantial endangerment to health and/or the environment due to the propensity of the contaminants to further spread and migrate into the School Site.

113.   LAUSD therefore seeks injunctive relief under RCRA, ordering the Defendants to stop the migration of the contamination from the United Alloys Property to the School Site, to clean up the existing contamination, and to assist LAUSD in cleaning up the hazardous waste and hazardous substance contamination they have caused at the School Site.  This requested remediation includes but is not limited to, the installation, maintenance and operation of all cleanup facilities.

114.   Pursuant to 40 U.S.C. Section 6972(e), LAUSD seeks an award of the costs of this litigation, including, but not limited to, reasonable attorney's fees and expert witness fees.

## **PRAYER FOR RELIEF**

WHEREFORE, LAUSD prays for judgment as follows:

1.     Against Defendants, and each of them, for response costs and other damages incurred by LAUSD, under CERCLA, including reasonable attorneys' fees and interest;

2.     Against Defendants, and each of them, for a judicial declaration under CERCLA that the Defendants are liable for all future response costs incurred by LAUSD and other costs that may be incurred by LAUSD in connection with the School Site;

3.     Against Defendants, and each of them, for response costs and other damages, under HSAA, incurred by LAUSD, including prejudgment interest allowed by law;

4.     Against Defendants, and each of them, for a judicial declaration under HSAA that the Defendants are liable for all future response costs and other costs that may be incurred by LAUSD in connection with the School Site;

5.     Against Defendants, and each of them, for general, consequential and

1  incidental damages, in an amount to be proven at trial, caused by Defendants'

2  continuing private nuisance, continuing public nuisance, continuing trespass,

3  negligence and negligence per se;

4      6.    Against Defendants, and each of them, for equitable indemnification;

5      7.    Against Defendants, and each of them, for a judicial declaration that the

6  Defendants caused the contamination at the School Site and are liable for its total

7  cost of remediation;

8      8.    Against Defendants, and each of them, for a preliminary injunction and

9  a permanent injunction enjoining the Defendants, their agents, servants, and all

10  persons acting under, in concert with, or for the Defendants, from:  (a) failing to

11  prevent contamination of the School Site; and (b) failing to remediate the hazardous

12  substances and other contaminants contained on the School Site;

13      9.    Against Defendants, and each of them, for the reasonable amount of

14  attorneys' fees and costs expended in recovering response costs and for the

15  reasonable fees required to retain experts and consultants;

16      10.    Against Defendants, and each of them, for LAUSD's expenditure of

17  costs to investigate, remove and remediate the hazardous substances and other

18  contaminants that the Defendants have allowed to migrate through the soils and

19  groundwater of the United Alloys Property and onto the School Site will confer a

20  significant benefit on the general public to protect and restore natural resources

21  within the public trust.  Therefore, LAUSD prays for all reasonable attorneys' fees

22  and costs pursuant to Cal. Civ. Proc. Code § 1021.5;

23      11.    Against Defendants, and each of them, for an order under RCRA that

24  Defendants must stop the contamination on the United Alloys Property from

25  migrating to the School Site;

26      12.    Against Defendants, and each of them, for punitive damages and

27  exemplary damages;

28      13.    Against Defendants, and each of them, for such other and further relief

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

834926.1

[PROPOSED] SECOND AMENDED COMPLAINT

1  which the Court may deem just and proper.

2  **<u>JURY DEMAND</u>**

3      Plaintiff demands a jury trial.

4

5  DATED: June _26_, 2013        MUSICK, PEELER & GARRETT LLP

6

7                         By: _____

8                            Barry C. Groveman

9                            Gregory J. Patterson

                          K. Ryan Hiete

10                            Adam D. Wieder

                          Attorneys for Plaintiff Los Angeles Unified

11                            School District

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

MUSICK, PEELER & GARRETT LLP
ATTORNEYS AT LAW

K. RYAN HIETE
r.hiete@mpglaw.com
(805) 418-3124

2801 TOWNSGATE ROAD, SUITE 200
WESTLAKE VILLAGE, CALIFORNIA 91361

TELEPHONE: (805) 418-3100
FACSIMILE: (805) 418-3101
WWW.MPGWEB.COM

LOS ANGELES
ORANGE COUNTY
SAN DIEGO
SAN FRANCISCO
SANTA BARBARA
WESTLAKE VILLAGE

FILE NO. 47715.064

May 4, 2012

**VIA CERTIFIED MAIL / RETURN RECEIPT REQUESTED**

United Alloys, Inc.
c/o Ron Donn
900 East Slauson Avenue
Los Angeles, California 90011

*Re:*  *90-Day Notice of Intent to Sue Owner/Operator of Facility at Which Disposal of Hazardous Substance Occurred, and Generator That Arranged for a Disposal of a Hazardous Substance; Notice of Violation of the Solid Waste Disposal Act ("RCRA"; 42 U.S.C. §§ 6901 et seq.); Notice of Intent to Sue Person Whose Disposal of Hazardous Substance and Solid Waste May Present Imminent and Substantial Endangerment to Health and the Environment*

Dear Mr. Donn:

This firm represents the Los Angeles Unified School District ("LAUSD") with respect to the cleanup and abatement of volatile organic compounds ("VOCs"), including, but not limited to, Trichloroethene and Tetrachloroethene in and around the real property commonly known as 644 East 56th Street, Los Angeles, California (the "School Site"). On behalf of LAUSD, we are writing you to put you on notice of LAUSD's intent to file an action against United Alloys, Inc. ("YOU"), in YOUR capacity as the owner and/or operator of the facility located at 900 East Slauson Avenue, Los Angeles California (the "United Alloys Property"), to recover response and remediation costs pursuant to the National Contingency Plan ("NCP"), for contribution, and for injunctive relief and civil penalties under CERCLA (42 U.S.C. §§ 9607, 9611, 9613, 9659) and RCRA (42 U.S.C. § 6972).

YOU are liable to LAUSD under RCRA as either or both: (i) a person who owned and/or operated a facility at a time during which a hazardous substance was disposed of, i.e., released into the environment, at that facility (an "Owner/Operator"); and/or (ii) a person who owned a hazardous substance and arranged for its transportation to, or disposal, i.e., release into the environment, at a facility operated by another (an "Arranger"). YOU are liable to LAUSD as a person who operated a facility at which its past handling, storage, treatment, and/or transportation of VOCs resulted in and continues to present an imminent and substantial endangerment to health and the environment.

MUSICK, PEELER & GARRETT LLP
ATTORNEYS AT LAW

Mr. Ron Donn
May 4, 2012
Page 2

## VOCs have been detected in and around the School Site

LAUSD will make the following allegations, among others, in the contemplated action:

1.     LAUSD has been conducting site assessment and remediation of the School Site under the jurisdiction of the DTSC since August of 2000.  LAUSD has incurred costs to conduct the site assessment activities and remediation and has incurred damages specific to it because it owns the School Site.

2.     As part of the remediation activities and pursuant to DTSC approval, LAUSD installed a soil vapor extraction system ("SVE") which began operating in August 2002.   The purpose of the SVE at the School Site is to remove Tetrachloroethylene ("PCE") and Trichloroethylene ("TCE") (collectively referred to herein as "VOCs"), from the soils, soil gas and groundwater beneath and in the vicinity of the School Site.

3.     Although initially, substantial reductions of VOCs on the School Site occurred through operation of the SVE system, LAUSD has been unable to achieve cleanup goals at all locations because of vapor migration of VOCs from the United Alloys Property, and, in fact, the trend of TCE and PCE concentrations in certain locations is increasing because of the groundwater and vapor migration.

4.     LAUSD has incurred significant costs as a direct result of the migration of VOCs onto the School Site from the United Alloys Property, and the United Alloys Defendants' continued failure to clean up the contamination at the United Alloys Property.  LAUSD estimates that the total cost to address the migrating VOC contamination is in the tens of millions of dollars.

5.     YOU purchased the United Alloys Property in 1980.  YOUR activities on the United Alloys Property included receiving and processing metals, including the use of a PCE degreaser.  The United Alloys Property is located approximately 400 feet from the School Site.

6.     In March of 1980, eighteen 5000 gallon flammable solvent underground storage tanks ("USTs") were removed from the United Alloys Property; however, no records are available documenting the USTs' removal.

7.     YOU retained and environmental engineer, Green Environmental, to conduct a site assessment in 1992.  Green Environmental identified on-site areas of potential contamination.  An additional investigation in 1993 confirmed the presence of VOCs and other chemicals in sub-surface soil.  Soil vapor surveys conducted in 1994 also confirmed the presence of PCE, TCE and other contaminants in sub-surface soil beneath the United Alloys Property.

MUSICK, PEELER & GARRETT LLP
ATTORNEYS AT LAW

Mr. Ron Donn
May 4, 2012
Page 3

Subsequent investigations also confirmed the presence of VOCs, including TCE and PCE in groundwater at and near the United Alloys Property.

8.    Despite confirming at least no later than 1994 that releases from the United Alloys Property had caused TCE and PCE contamination, YOU had not started any actual on-site cleanup of the contamination until July 2009 for a 4-month pilot test.

9.    The migration of the PCE contamination in the vadose zone from the United Alloys Property to the School Site has increased the costs of soil remediation at the School Site and extended the period of time required for operation of the SVE system. The DTSC has recently concurred with LAUSD's concerns and has identified the United Alloys Property as a contributor to the VOC contamination beneath the School Site and has suggested to LAUSD extensive measures to mitigate the continued migration of VOCs from the United Alloys Property.

## United Alloys Property's VOC Contamination Presents an Imminent and Substantial Endangerment to Public Health and the Environment

The RCRA hazardous wastes which YOU are allowing to be disposed of through YOUR operations have well-documented, serious effects on human health and the environment. The following bullets are EPA's assessment of some of the human health impacts that result from some of the constituents of solvent waste migrating from YOUR site to the School Site:

_PCE:_ PCE has been used as a metal degreaser by industry since the 1940s. Due to poor handling and disposal practices, solvents such as PCE and trichloroethylene entered the environment through evaporation, leaks and improper disposal.

US EPA states that the major effects from chronic inhalation exposure to PCE in humans are neurological effects, including sensory symptoms such as headaches, impairments in cognitive and motor neurobehavioral functioning and color vision decrements. Other effects noted in humans include cardiac arrhythmia, liver damage, and possible kidney effects. US EPA guidance documents further state that epidemiological studies of workers exposed to tetrachloroethylene and other solvents suggest an increased risk for a variety of cancers (esophagus, kidney, bladder, lung, pancreas, and cervix). (See, e.g., http://www.epa.gov/ttn/atw/hlthef/tet-ethy.html)

_TCE:_ Most of the TCE used in the United States is released into the atmosphere from industrial degreasing operations. Acute (short-term) and chronic (long-term) inhalation exposure to trichloroethylene can affect the human central nervous system (CNS), with symptoms such as dizziness, headaches, confusion, euphoria, facial numbness, and weakness. Liver, kidney, immunological, endocrine, and developmental effects have also been reported in humans. A

MUSICK, PEELER & GARRETT LLP
ATTORNEYS AT LAW

Mr. Ron Donn
May 4, 2012
Page 4

recent analysis of available epidemiological studies reports trichloroethylene exposure to be associated with several types of cancers in humans, especially kidney, liver, cervix, and lymphatic system. Animal studies have reported increases in lung, liver, kidney, and testicular tumors and lymphoma. The US EPA is currently reassessing the cancer classification of TCE.

US EPA guidance documents state that he cancer epidemiology for TCE has grown in recent years with several large, well-designed studies being published. A recent analysis of available epidemiological studies reports trichloroethylene exposure to be associated with several types of cancers in humans, especially kidney, liver, cervix, and lymphatic system. Consistency across epidemiological studies is strongest for an association between TCE exposure and kidney cancer. These results are supported by recent molecular epidemiology studies showing specific renal cell mutations found primarily in renal cell carcinoma patients exposed to trichloroethylene. (See, e.g., http://www.epa.gov/ttn/atw/hlthef/tri-ethy.html)

All of these past releases of hazardous substances and solid wastes into the soil and groundwater, the continuing migration of these hazardous substances and solid wastes from the soil into the groundwater, and the threat of future migration of hazardous substances and solid wastes into the groundwater present imminent and substantial threats to health and the environment for which YOU are legally responsible.

## **Conclusion**

If YOU do not act within ninety (90) days to correct the above violations and remove the VOCs that continue to contaminate the School Site from the soil and groundwater, LAUSD will pursue legal against YOU as set forth above. If YOU have any questions regarding this matter, please contact this office.

Very truly yours,

K. Ryan Hiéte
MUSICK, PEELER & GARRETT LLP

KRH

*[See Copy List on the Following Page]*

MUSICK, PEELER & GARRETT LLP
ATTORNEYS AT LAW

Mr. Ron Donn
May 4, 2012
Page 5

cc:     Via Certified Mail/Return Receipt Requested

William Funderburk
Counsel to United Alloys, Inc.
811 Wilshire Boulevard, Suite 1025
Los Angeles, California 90017

Lisa Jackson
Administrator
United States Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Washington, DC  20460

Mr. Wayne Nastri
Administrator, Region 9
United State Environmental Protection Agency
75 Hawthorne Street
San Francisco, California  94105

Mathew Rodriguez
Agency Secretary
California Environmental Protection Agency
1001 I Street
Sacramento, California  95812-2815

Debbie Raphael, Director
California Department of Toxic Substances Control
1001 I Street
Sacramento, California 95814-2828

Samuel Unger, Executive Officer
California Regional Water Quality Control Board, Los Angeles
320 West Fourth Street, Suite 200
Los Angeles, California 90013

Norman Rave
United States Department of Justice
Environment & Natural Resources Division
Post Office Box 23986
Washington, D.C. 20026-3986

MUSICK, PEELER & GARRETT LLP
ATTORNEYS AT LAW

Mr. Ron Donn
May 4, 2012
Page 6

Jay Golida, Associate General Counsel
Los Angeles Unified School District
333 S. Beaudry Avenue, 23rd Floor
Los Angeles, California 90017

Steve Cooley, District Attorney
District Attorney's Office
County of Los Angeles
210 West Temple Street, Suite 18000
Los Angeles, California 90012-3210

Attorney General's Office
California Department of Justice
Attn: Kamala D. Harris, California Attorney General
Post Office Box 944255
Sacramento, California 94244-2550

790725.1

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

William Funderburk
Counsel to United Alloys, Inc.
811 Wilshire Blvd., Ste. 1025
Los Angeles, CA 90017

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _Skarlett_       ☐ Agent
                   ☐ Addressee

B. Received by ( Printed Name )        C. Date of Delivery
_Skarlett S_                            5/10/12

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☒ Certified Mail     ☐ Express Mail
   ☐ Registered         ☐ Return Receipt for Merchandise
   ☐ Insured Mail       ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)             ☐ Yes

2. Article Number
   (Transfer from service label)    7011 3500 0003 3787 5808

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

United Alloys, Inc.
c/o Ron Donn
900 East Slauson Ave.
Los Angeles, CA 90011

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X                   ☐ Agent
                    ☐ Addressee

B. Received by ( Printed Name )        C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☒ Certified Mail     ☐ Express Mail
   ☐ Registered         ☐ Return Receipt for Merchandise
   ☐ Insured Mail       ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)             ☐ Yes

2. Article Number
   (Transfer from service label)    7011 3500 0003 3787 5686

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

MUSICK, PEELER & GARRETT LLP
ATTORNEYS AT LAW

ADAM D. WIEDER
a.wieder@mpglaw.com
(805) 418-3114

2801 TOWNSGATE ROAD, SUITE 200
WESTLAKE VILLAGE, CALIFORNIA 91361
————————
TELEPHONE: (805) 418-3100
FACSIMILE: (805) 418-3101
WWW.MUSICKPEELER.COM

LOS ANGELES
ORANGE COUNTY
SAN DIEGO
SAN FRANCISCO
SANTA BARBARA
WESTLAKE VILLAGE

FILE NO.: 47715.064

May 18, 2012

**VIA CERTIFIED MAIL / RETURN RECEIPT REQUESTED**

Ron Donn
18157 Andrea Circle North, Unit 5
Northridge, California 91325-1104

*Re:* *90-Day Notice of Intent to Sue Owner/Operator of Facility at Which Disposal of Hazardous Substance Occurred, and Generator That Arranged for a Disposal of a Hazardous Substance: Notice of Violation of the Solid Waste Disposal Act ("RCRA"; 42 U.S.C. §§ 6901 et seq.); Notice of Intent to Sue Person Whose Disposal of Hazardous Substance and Solid Waste May Present Imminent and Substantial Endangerment to Health and the Environment*

Dear Mr. Donn:

This firm represents the Los Angeles Unified School District ("LAUSD") with respect to the cleanup and abatement of volatile organic compounds ("VOCs"), including, but not limited to, Trichloroethene and Tetrachloroethene in and around the real property commonly known as 644 East 56th Street, Los Angeles, California (the "School Site"). On behalf of LAUSD, we are writing you to put you on notice of LAUSD's intent to file an action against Ron Donn ("YOU"), in YOUR capacity as the owner and/or operator of the facility located at 900 East Slauson Avenue, Los Angeles California (the "United Alloys Property"), to recover response and remediation costs pursuant to the National Contingency Plan ("NCP"), for contribution, and for injunctive relief and civil penalties under CERCLA (42 U.S.C. §§ 9607, 9611, 9613, 9659) and RCRA (42 U.S.C. § 6972).

YOU are liable to LAUSD under RCRA as either or both: (i) a person who owned and/or operated a facility at a time during which a hazardous substance was disposed of, i.e., released into the environment, at that facility (an "Owner/Operator"); and/or (ii) a person who owned a hazardous substance and arranged for its transportation to, or disposal, i.e., release into the environment, at a facility operated by another (an "Arranger"). YOU are liable to LAUSD as a person who operated a facility at which its past handling, storage, treatment, and/or transportation of VOCs resulted in and continues to present an imminent and substantial endangerment to health and the environment.

MUSICK, PEELER & GARRETT LLP
ATTORNEYS AT LAW

Mr. Ron Donn
May 18, 2012
Page 2

## VOCs have been detected in and around the School Site

LAUSD will make the following allegations, among others, in the contemplated action:

1.     LAUSD has been conducting site assessment and remediation of the School Site under the jurisdiction of the DTSC since August of 2000.  LAUSD has incurred costs to conduct the site assessment activities and remediation and has incurred damages specific to it because it owns the School Site.

2.     As part of the remediation activities and pursuant to DTSC approval, LAUSD installed a soil vapor extraction system ("SVE") which began operating in August 2002.  The purpose of the SVE at the School Site is to remove Tetrachloroethylene ("PCE") and Trichloroethylene ("TCE") (collectively referred to herein as "VOCs"), from the soils, soil gas and groundwater beneath and in the vicinity of the School Site.

3.     Although initially, substantial reductions of VOCs on the School Site occurred through operation of the SVE system, LAUSD has been unable to achieve cleanup goals at all locations because of vapor migration of VOCs from the United Alloys Property, and, in fact, the trend of TCE and PCE concentrations in certain locations is increasing because of the groundwater and vapor migration.

4.     LAUSD has incurred significant costs as a direct result of the migration of VOCs onto the School Site from the United Alloys Property, and the United Alloys Defendants' continued failure to clean up the contamination at the United Alloys Property.  LAUSD estimates that the total cost to address the migrating VOC contamination is in the tens of millions of dollars.

5.     YOU purchased the United Alloys Property in 1980.  YOUR activities on the United Alloys Property included receiving and processing metals, including the use of a PCE degreaser.  The United Alloys Property is located approximately 400 feet from the School Site.

6.     In March of 1980, eighteen 5000 gallon flammable solvent underground storage tanks ("USTs") were removed from the United Alloys Property; however, no records are available documenting the USTs' removal.

7.     YOU retained and environmental engineer, Green Environmental, to conduct a site assessment in 1992.  Green Environmental identified on-site areas of potential contamination.  An additional investigation in 1993 confirmed the presence of VOCs and other chemicals in sub-surface soil.  Soil vapor surveys conducted in 1994 also confirmed the presence of PCE, TCE and other contaminants in sub-surface soil beneath the United Alloys Property.

MUSICK, PEELER & GARRETT LLP
ATTORNEYS AT LAW

Mr. Ron Donn
May 18, 2012
Page 3

Subsequent investigations also confirmed the presence of VOCs, including TCE and PCE in groundwater at and near the United Alloys Property.

8.      Despite confirming at least no later than 1994 that releases from the United Alloys Property had caused TCE and PCE contamination, YOU had not started any actual on-site cleanup of the contamination until July 2009 for a 4-month pilot test.

9.      The migration of the PCE contamination in the vadose zone from the United Alloys Property to the School Site has increased the costs of soil remediation at the School Site and extended the period of time required for operation of the SVE system. The DTSC has recently concurred with LAUSD's concerns and has identified the United Alloys Property as a contributor to the VOC contamination beneath the School Site and has suggested to LAUSD extensive measures to mitigate the continued migration of VOCs from the United Alloys Property.

## United Alloys Property's VOC Contamination Presents an Imminent and Substantial Endangerment to Public Health and the Environment

The RCRA hazardous wastes which YOU are allowing to be disposed of through YOUR operations have well-documented, serious effects on human health and the environment. The following bullets are EPA's assessment of some of the human health impacts that result from some of the constituents of solvent waste migrating from YOUR site to the School Site:

*PCE:* PCE has been used as a metal degreaser by industry since the 1940s. Due to poor handling and disposal practices, solvents such as PCE and trichloroethylene entered the environment through evaporation, leaks and improper disposal.

US EPA states that the major effects from chronic inhalation exposure to PCE in humans are neurological effects, including sensory symptoms such as headaches, impairments in cognititve and motor neurobehavioral functioning and color vision decrements. Other effects noted in humans include cardiac arrhythmia, liver damage, and possible kidney effects. US EPA guidance documents further state that epidemiological studies of workers exposed to tetrachloroethylene and other solvents suggest an increased risk for a variety of cancers (esophagus, kidney, bladder, lung, pancreas, and cervix). (See, e.g., http://www.epa.gov/ttn/atw/hlthef/tet-ethy.html)

*TCE:* Most of the TCE used in the United States is released into the atmosphere from industrial degreasing operations. Acute (short-term) and chronic (long-term) inhalation exposure to trichloroethylene can affect the human central nervous system (CNS), with symptoms such as dizziness, headaches, confusion, euphoria, facial numbness, and weakness. Liver, kidney, immunological, endocrine, and developmental effects have also been reported in humans. A

MUSICK, PEELER & GARRETT LLP
ATTORNEYS AT LAW

Mr. Ron Donn
May 18, 2012
Page 4

recent analysis of available epidemiological studies reports trichloroethylene exposure to be associated with several types of cancers in humans, especially kidney, liver, cervix, and lymphatic system. Animal studies have reported increases in lung, liver, kidney, and testicular tumors and lymphoma. The US EPA is currently reassessing the cancer classification of TCE.

US EPA guidance documents state that he cancer epidemiology for TCE has grown in recent years with several large, well-designed studies being published. A recent analysis of available epidemiological studies reports trichloroethylene exposure to be associated with several types of cancers in humans, especially kidney, liver, cervix, and lymphatic system. Consistency across epidemiological studies is strongest for an association between TCE exposure and kidney cancer. These results are supported by recent molecular epidemiology studies showing specific renal cell mutations found primarily in renal cell carcinoma patients exposed to trichloroethylene. (See, e.g., http://www.epa.gov/ttn/atw/hlthef/tri-ethy.html)

All of these past releases of hazardous substances and solid wastes into the soil and groundwater, the continuing migration of these hazardous substances and solid wastes from the soil into the groundwater, and the threat of future migration of hazardous substances and solid wastes into the groundwater present imminent and substantial threats to health and the environment for which YOU are legally responsible.

## Conclusion

If YOU do not act within ninety (90) days to correct the above violations and remove the VOCs that continue to contaminate the School Site from the soil and groundwater, LAUSD will pursue legal against YOU as set forth above. If YOU have any questions regarding this matter, please contact this office.

Very truly yours,

Adam D. Wieder
for MUSICK, PEELER & GARRETT LLP

ADW

*[See Copy List on the Following Page]*

MUSICK, PEELER & GARRETT LLP
ATTORNEYS AT LAW

Mr. Ron Donn
May 18, 2012
Page 5

cc:     Via Certified Mail/Return Receipt Requested

        William Funderburk
        Counsel to United Alloys, Inc.
        811 Wilshire Boulevard, Suite 1025
        Los Angeles, California 90017

        Lisa Jackson
        Administrator
        United States Environmental Protection Agency
        Ariel Rios Building
        1200 Pennsylvania Avenue, N.W.
        Washington, DC  20460

        Mr. Wayne Nastri
        Administrator, Region 9
        United State Environmental Protection Agency
        75 Hawthorne Street
        San Francisco, California  94105

        Mathew Rodriguez
        Agency Secretary
        California Environmental Protection Agency
        1001 I Street
        Sacramento, California  95812-2815

        Debbie Raphael, Director
        California Department of Toxic Substances Control
        1001 I Street
        Sacramento, California 95814-2828

        Samuel Unger, Executive Officer
        California Regional Water Quality Control Board, Los Angeles
        320 West Fourth Street, Suite 200
        Los Angeles, California 90013

        Norman Rave
        United States Department of Justice
        Environment & Natural Resources Division
        Post Office Box 23986
        Washington, D.C. 20026-3986

MUSICK, PEELER & GARRETT LLP
ATTORNEYS AT LAW

Mr. Ron Donn
May 18, 2012
Page 6

Jay Golida, Associate General Counsel
Los Angeles Unified School District
333 S. Beaudry Avenue, 23rd Floor
Los Angeles, California 90017

Steve Cooley, District Attorney
District Attorney's Office
County of Los Angeles
210 West Temple Street, Suite 18000
Los Angeles, California 90012-3210

Attorney General's Office
California Department of Justice
Attn: Kamala D. Harris, California Attorney General
Post Office Box 944255
Sacramento, California 94244-2550

791097.1

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Ron Donn
18157 Andrea Circle N., #5
Northridge, CA 91325-1104

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

☑ Agent
☐ Addressee

B. Received by ( *Printed Name*)   C. Date of Delivery

Bryan Donn   5/24/12

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
   ☒ Certified Mail   ☐ Express Mail
   ☐ Registered   ☐ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (*Extra Fee*)   ☐ Yes

2. Article Number
   (*Transfer from service label*)   7011 3500 0003 3788 0178

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

# MUSICK, PEELER & GARRETT LLP
## ATTORNEYS AT LAW

K. RYAN HIETE
r.hiete@mpglaw.com
(805) 418-3124

2801 TOWNSGATE ROAD, SUITE 200
WESTLAKE VILLAGE, CALIFORNIA 91361
————————
TELEPHONE: (805) 418-3100
FACSIMILE: (805) 418-3101
WWW.MPGWEB.COM

LOS ANGELES
ORANGE COUNTY
SAN DIEGO
SAN FRANCISCO
SANTA BARBARA
WESTLAKE VILLAGE

FILE NO. 47715.064

May 16, 2012

## VIA CERTIFIED MAIL / RETURN RECEIPT REQUESTED

United Alloys & Metals, Inc.
c/o CSC-Lawyers Incorporating Service
2710 Gateway Oaks Drive, Suite 150N
Sacramento, California  95833

Re:   *90-Day Notice of Intent to Sue Owner/Operator of Facility at Which Disposal of Hazardous Substance Occurred, and Generator That Arranged for a Disposal of a Hazardous Substance; Notice of Violation of the Solid Waste Disposal Act ("RCRA"; 42 U.S.C. §§ 6901 et seq.); Notice of Intent to Sue Person Whose Disposal of Hazardous Substance and Solid Waste May Present Imminent and Substantial Endangerment to Health and the Environment*

To Whom It May Concern:

This firm represents the Los Angeles Unified School District ("LAUSD") with respect to the cleanup and abatement of volatile organic compounds ("VOCs"), including, but not limited to, Trichloroethene and Tetrachloroethene in and around the real property commonly known as 644 East 56th Street, Los Angeles, California (the "School Site"). On behalf of LAUSD, we are writing to put you on notice of LAUSD's intent to file an action against United Alloys & Metals, Inc. ("YOU"), in YOUR capacity as the owner and/or operator of the facility located at 900 East Slauson Avenue, Los Angeles California (the "United Alloys Property"), to recover response and remediation costs pursuant to the National Contingency Plan ("NCP"), for contribution, and for injunctive relief and civil penalties under CERCLA (42 U.S.C. §§ 9607, 9611, 9613, 9659) and RCRA (42 U.S.C. § 6972).

YOU are liable to LAUSD under RCRA as either or both: (i) a person who owned and/or operated a facility at a time during which a hazardous substance was disposed of, i.e., released into the environment, at that facility (an "Owner/Operator"); and/or (ii) a person who owned a hazardous substance and arranged for its transportation to, or disposal, i.e., release into the environment, at a facility operated by another (an "Arranger"). YOU are liable to LAUSD as a person who operated a facility at which its past handling, storage, treatment, and/or transportation of VOCs resulted in and continues to present an imminent and substantial endangerment to health and the environment.

MUSICK, PEELER & GARRETT LLP
ATTORNEYS AT LAW

United Alloys & Metals, Inc.
May 16, 2012
Page 2

## VOCs have been detected in and around the School Site

LAUSD will make the following allegations, among others, in the contemplated action:

1.    LAUSD has been conducting site assessment and remediation of the School Site under the jurisdiction of the DTSC since August of 2000.  LAUSD has incurred costs to conduct the site assessment activities and remediation and has incurred damages specific to it because it owns the School Site.

2.    As part of the remediation activities and pursuant to DTSC approval, LAUSD installed a soil vapor extraction system ("SVE") which began operating in August 2002.  The purpose of the SVE at the School Site is to remove Tetrachloroethylene ("PCE") and Trichloroethylene ("TCE") (collectively referred to herein as "VOCs"), from the soils, soil gas and groundwater beneath and in the vicinity of the School Site.

3.    Although initially, substantial reductions of VOCs on the School Site occurred through operation of the SVE system, LAUSD has been unable to achieve cleanup goals at all locations because of vapor migration of VOCs from the United Alloys Property, and, in fact, the trend of TCE and PCE concentrations in certain locations is increasing because of the groundwater and vapor migration.

4.    LAUSD has incurred significant costs as a direct result of the migration of VOCs onto the School Site from the United Alloys Property, and the United Alloys Defendants' continued failure to clean up the contamination at the United Alloys Property.  LAUSD estimates that the total cost to address the migrating VOC contamination is in the tens of millions of dollars.

5.    YOU purchased the United Alloys Property in 1980.  YOUR activities on the United Alloys Property included receiving and processing metals, including the use of a PCE degreaser.  The United Alloys Property is located approximately 400 feet from the School Site.

6.    In March of 1980, eighteen 5000 gallon flammable solvent underground storage tanks ("USTs") were removed from the United Alloys Property; however, no records are available documenting the USTs' removal.

7.    YOU retained and environmental engineer, Green Environmental, to conduct a site assessment in 1992.  Green Environmental identified on-site areas of potential contamination.  An additional investigation in 1993 confirmed the presence of VOCs and other chemicals in sub-surface soil.  Soil vapor surveys conducted in 1994 also confirmed the presence of PCE, TCE and other contaminants in sub-surface soil beneath the United Alloys Property.

MUSICK, PEELER & GARRETT LLP
ATTORNEYS AT LAW

United Alloys & Metals, Inc.
May 16, 2012
Page 3

Subsequent investigations also confirmed the presence of VOCs, including TCE and PCE in groundwater at and near the United Alloys Property.

8.     Despite confirming at least no later than 1994 that releases from the United Alloys Property had caused TCE and PCE contamination, YOU had not started any actual on-site cleanup of the contamination until July 2009 for a 4-month pilot test.

9.     The migration of the PCE contamination in the vadose zone from the United Alloys Property to the School Site has increased the costs of soil remediation at the School Site and extended the period of time required for operation of the SVE system.  The DTSC has recently concurred with LAUSD's concerns and has identified the United Alloys Property as a contributor to the VOC contamination beneath the School Site and has suggested to LAUSD extensive measures to mitigate the continued migration of VOCs from the United Alloys Property.

## United Alloys Property's VOC Contamination Presents an Imminent and Substantial Endangerment to Public Health and the Environment

The RCRA hazardous wastes which YOU are allowing to be disposed of through YOUR operations have well-documented, serious effects on human health and the environment.  The following bullets are EPA's assessment of some of the human health impacts that result from some of the constituents of solvent waste migrating from YOUR site to the School Site:

*PCE:*  PCE has been used as a metal degreaser by industry since the 1940s.  Due to poor handling and disposal practices, solvents such as PCE and trichloroethylene entered the environment through evaporation, leaks and improper disposal.

US EPA states that the major effects from chronic inhalation exposure to PCE in humans are neurological effects, including sensory symptoms such as headaches, impairments in cognititve and motor neurobehavioral functioning and color vision decrements.  Other effects noted in humans include cardiac arrhythmia, liver damage, and possible kidney effects.  US EPA guidance documents further state that epidemiological studies of workers exposed to tetrachloroethylene and other solvents suggest an increased risk for a variety of cancers (esophagus, kidney, bladder, lung, pancreas, and cervix).  (See, e.g., http://www.epa.gov/ttn/atw/hlthef/tet-ethy.html)

*TCE:*  Most of the TCE used in the United States is released into the atmosphere from industrial degreasing operations.  Acute (short-term) and chronic (long-term) inhalation exposure to trichloroethylene can affect the human central nervous system (CNS), with symptoms such as dizziness, headaches, confusion, euphoria, facial numbness, and weakness.  Liver, kidney, immunological, endocrine, and developmental effects have also been reported in humans.  A

MUSICK, PEELER & GARRETT LLP
ATTORNEYS AT LAW

United Alloys & Metals, Inc.
May 16, 2012
Page 4

recent analysis of available epidemiological studies reports trichloroethylene exposure to be associated with several types of cancers in humans, especially kidney, liver, cervix, and lymphatic system. Animal studies have reported increases in lung, liver, kidney, and testicular tumors and lymphoma. The US EPA is currently reassessing the cancer classification of TCE.

US EPA guidance documents state that he cancer epidemiology for TCE has grown in recent years with several large, well-designed studies being published. A recent analysis of available epidemiological studies reports trichloroethylene exposure to be associated with several types of cancers in humans, especially kidney, liver, cervix, and lymphatic system. Consistency across epidemiological studies is strongest for an association between TCE exposure and kidney cancer. These results are supported by recent molecular epidemiology studies showing specific renal cell mutations found primarily in renal cell carcinoma patients exposed to trichloroethylene. (See, e.g., http://www.epa.gov/ttn/atw/hlthef/tri-ethy.html)

All of these past releases of hazardous substances and solid wastes into the soil and groundwater, the continuing migration of these hazardous substances and solid wastes from the soil into the groundwater, and the threat of future migration of hazardous substances and solid wastes into the groundwater present imminent and substantial threats to health and the environment for which YOU are legally responsible.

## Conclusion

If YOU do not act within ninety (90) days to correct the above violations and remove the VOCs that continue to contaminate the School Site from the soil and groundwater, LAUSD will pursue legal against YOU as set forth above. If YOU have any questions regarding this matter, please contact this office.

Very truly yours,

K. Ryan Heete
MUSICK, PEELER & GARRETT LLP

KRH

*[See Copy List on the Following Page]*

MUSICK, PEELER & GARRETT LLP
ATTORNEYS AT LAW

United Alloys & Metals, Inc.
May 16, 2012
Page 5

cc:   Via Certified Mail/Return Receipt Requested

William Funderburk
Counsel to United Alloys, Inc.
811 Wilshire Boulevard, Suite 1025
Los Angeles, California 90017

Lisa Jackson
Administrator
United States Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Washington, DC  20460

Mr. Wayne Nastri
Administrator, Region 9
United State Environmental Protection Agency
75 Hawthorne Street
San Francisco, California  94105

Mathew Rodriguez
Agency Secretary
California Environmental Protection Agency
1001 I Street
Sacramento, California  95812-2815

Debbie Raphael, Director
California Department of Toxic Substances Control
1001 I Street
Sacramento, California 95814-2828

Samuel Unger, Executive Officer
California Regional Water Quality Control Board, Los Angeles
320 West Fourth Street, Suite 200
Los Angeles, California 90013

Norman Rave
United States Department of Justice
Environment & Natural Resources Division
Post Office Box 23986
Washington, D.C. 20026-3986

MUSICK, PEELER & GARRETT LLP
ATTORNEYS AT LAW

United Alloys & Metals, Inc.
May 16, 2012
Page 6


Jay Golida, Associate General Counsel
Los Angeles Unified School District
333 S. Beaudry Avenue, 23rd Floor
Los Angeles, California 90017

Steve Cooley, District Attorney
District Attorney's Office
County of Los Angeles
210 West Temple Street, Suite 18000
Los Angeles, California 90012-3210

Attorney General's Office
California Department of Justice
Attn: Kamala D. Harris, California Attorney General
Post Office Box 944255
Sacramento, California 94244-2550


793402.1

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent  ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

1. Article Addressed to:

United Alloys & Metals, Inc.
c/o CSC-Lawyers Incorporating Service
2710 Gateway Oaks Dr., Ste. 150N
Sacramento, CA 95833

3. Service Type
   ☐ Certified Mail   ☐ Express Mail
   ☐ Registered       ☐ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)   7009 3410 0001 3526 9413

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

MUSICK, PEELER & GARRETT LLP

ATTORNEYS AT LAW

K. RYAN HIETE
r.hiete@mpglaw.com
(805) 418-3124

2801 TOWNSGATE ROAD, SUITE 200
WESTLAKE VILLAGE, CALIFORNIA 91361
————————
TELEPHONE: (805) 418-3100
FACSIMILE: (805) 418-3101
WWW.MPGWEB.COM

LOS ANGELES
ORANGE COUNTY
SAN DIEGO
SAN FRANCISCO
SANTA BARBARA
WESTLAKE VILLAGE

FILE NO. 47715.064

May 7, 2012

**VIA CERTIFIED MAIL / RETURN RECEIPT REQUESTED**

Flask Chemical Corporation
c/o Gerald Shapiro
13226 Nelson Ave.
Industry, CA 91746

Flask Chemical Corporation
c/o David F. Wood & Sheila E. Fix
Wood Smith Henning & Berman LLP
10960 Wilshire Blvd., 18th Floor
Los Angeles, CA 90024

Re:   *90-Day Notice of Intent to Sue Owner/Operator of Facility at Which Disposal of Hazardous Substance Occurred, and Generator That Arranged for a Disposal of a Hazardous Substance; Notice of Violation of the Solid Waste Disposal Act ("RCRA"; 42 U.S.C. §§ 6901 et seq.); Notice of Intent to Sue Person Whose Disposal of Hazardous Substance and Solid Waste May Present Imminent and Substantial Endangerment to Health and the Environment*

Dear Mr. Shapiro:

This firm represents the Los Angeles Unified School District ("LAUSD") with respect to the cleanup and abatement of volatile organic compounds ("VOCs"), including, but not limited to, Trichloroethene and Tetrachloroethene in and around the real property commonly known as 644 East 56th Street, Los Angeles, California (the "School Site"). On behalf of LAUSD, we are writing you to put you on notice of LAUSD's intent to file an action against Flask Chemical Corporation ("YOU"), in YOUR capacity as the former owner and/or operator of the facility currently owned by United Alloys, Inc, which is located at 900 East Slauson Avenue, Los Angeles California (the "United Alloys Property"), to recover response and remediation costs pursuant to the National Contingency Plan ("NCP"), for contribution, and for injunctive relief and civil penalties under CERCLA (42 U.S.C. §§ 9607, 9611, 9613, 9659) and RCRA (42 U.S.C. § 6972).

YOU are liable to LAUSD under RCRA as either or both: (i) a person who owned and/or operated a facility at a time during which a hazardous substance was disposed of, i.e., released into the environment, at that facility (an "Owner/Operator"); and/or (ii) a person who owned a hazardous substance and arranged for its transportation to, or disposal, i.e., release into the environment, at a facility operated by another (an "Arranger"). YOU are liable to LAUSD as

MUSICK, PEELER & GARRETT LLP
ATTORNEYS AT LAW

Flask Chemical Corporation
May 7, 2012
Page 2

a person who operated a facility at which its past handling, storage, treatment, and/or transportation of VOCs resulted in and continues to present an imminent and substantial endangerment to health and the environment.

## VOCs have been detected in and around the School Site

LAUSD will make the following allegations, among others, in the contemplated action:

1.     LAUSD has been conducting site assessment and remediation of the School Site under the jurisdiction of the DTSC since August of 2000.  LAUSD has incurred costs to conduct the site assessment activities and remediation and has incurred damages specific to it because it owns the School Site.

2.     As part of the remediation activities and pursuant to DTSC approval, LAUSD installed a soil vapor extraction system ("SVE") which began operating in August 2002.  The purpose of the SVE at the School Site is to remove Tetrachloroethylene ("PCE") and Trichloroethylene ("TCE") (collectively referred to herein as "VOCs"), from the soils, soil gas and groundwater beneath and in the vicinity of the School Site.

3.     Although initially, substantial reductions of VOCs on the School Site occurred through operation of the SVE system, LAUSD has been unable to achieve cleanup goals at all locations because of vapor migration of VOCs from the United Alloys Property, and, in fact, the trend of TCE and PCE concentrations in certain locations is increasing because of the groundwater and vapor migration.

4.     LAUSD has incurred significant costs as a direct result of the migration of VOCs onto the School Site from the United Alloys Property, and YOUR failure to clean up the contamination at the United Alloys Property.  LAUSD estimates that the total cost to address the migrating VOC contamination is in the tens of millions of dollars.

5.     YOU owned and/or operated the United Alloys Property from around 1972 to 1979.  During that time YOU operated a chemical distribution facility at the United Alloys Property, which is located approximately 400 feet from the School Site.

6.     In March of 1980, eighteen 5000 gallon flammable solvent underground storage tanks ("USTs") were removed from the United Alloys Property; however, no records are available documenting the USTs' removal.

7.     The migration of the PCE contamination in the vadose zone from the United Alloys Property to the School Site has increased the costs of soil remediation at the School Site

MUSICK, PEELER & GARRETT LLP
ATTORNEYS AT LAW

Flask Chemical Corporation
May 7, 2012
Page 3

and extended the period of time required for operation of the SVE system. The DTSC has recently concurred with LAUSD's concerns and has identified the United Alloys Property as a contributor to the VOC contamination beneath the School Site and has suggested to LAUSD extensive measures to mitigate the continued migration of VOCs from the United Alloys Property.

## United Alloys Property's VOC Contamination Presents an Imminent and Substantial Endangerment to Public Health and the Environment

The RCRA hazardous wastes which YOU allowed to be disposed of through YOUR operations have well-documented, serious effects on human health and the environment. The following bullets are EPA's assessment of some of the human health impacts that result from some of the constituents of solvent waste migrating from YOUR site to the School Site:

*PCE:*  PCE has been used as a metal degreaser by industry since the 1940s. Due to poor handling and disposal practices, solvents such as PCE and trichloroethylene entered the environment through evaporation, leaks and improper disposal.

US EPA states that the major effects from chronic inhalation exposure to PCE in humans are neurological effects, including sensory symptoms such as headaches, impairments in cognititve and motor neurobehavioral functioning and color vision decrements. Other effects noted in humans include cardiac arrhythmia, liver damage, and possible kidney effects. US EPA guidance documents further state that epidemiological studies of workers exposed to tetrachloroethylene and other solvents suggest an increased risk for a variety of cancers (esophagus, kidney, bladder, lung, pancreas, and cervix).  (See, e.g., http://www.epa.gov/ttn/atw/hlthef/tet-ethy.html)

*TCE:*  Most of the TCE used in the United States is released into the atmosphere from industrial degreasing operations. Acute (short-term) and chronic (long-term) inhalation exposure to trichloroethylene can affect the human central nervous system (CNS), with symptoms such as dizziness, headaches, confusion, euphoria, facial numbness, and weakness. Liver, kidney, immunological, endocrine, and developmental effects have also been reported in humans. A recent analysis of available epidemiological studies reports trichloroethylene exposure to be associated with several types of cancers in humans, especially kidney, liver, cervix, and lymphatic system. Animal studies have reported increases in lung, liver, kidney, and testicular tumors and lymphoma. The US EPA is currently reassessing the cancer classification of TCE.

US EPA guidance documents state that he cancer epidemiology for TCE has grown in recent years with several large, well-designed studies being published. A recent analysis of available epidemiological studies reports trichloroethylene exposure to be associated with several types of cancers in humans, especially kidney, liver, cervix, and lymphatic system. Consistency

MUSICK, PEELER & GARRETT LLP
ATTORNEYS AT LAW

Flask Chemical Corporation
May 7, 2012
Page 4

across epidemiological studies is strongest for an association between TCE exposure and kidney cancer. These results are supported by recent molecular epidemiology studies showing specific renal cell mutations found primarily in renal cell carcinoma patients exposed to trichloroethylene. (See, e.g., http://www.epa.gov/ttn/atw/hlthef/tri-ethy.html)

All of these past releases of hazardous substances and solid wastes into the soil and groundwater, the continuing migration of these hazardous substances and solid wastes from the soil into the groundwater, and the threat of future migration of hazardous substances and solid wastes into the groundwater present imminent and substantial threats to health and the environment for which YOU are legally responsible.

## Conclusion

If YOU do not act within ninety (90) days to correct the above violations and remove the VOCs that continue to contaminate the School Site from the soil and groundwater, LAUSD will pursue legal against YOU as set forth above. If YOU have any questions regarding this matter, please contact this office.

Very truly yours,

K. Ryan Hiete
MUSICK, PEELER & GARRETT LLP

KRH

*[See Copy List on the Following Page]*

MUSICK, PEELER & GARRETT LLP

ATTORNEYS AT LAW

Flask Chemical Corporation
May 7, 2012
Page 5

cc:      Via Certified Mail/Return Receipt Requested

William Funderburk
Counsel to United Alloys, Inc.
811 Wilshire Boulevard, Suite 1025
Los Angeles, California 90017

Lisa Jackson
Administrator
United States Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Washington, DC  20460

Mr. Wayne Nastri
Administrator, Region 9
United State Environmental Protection Agency
75 Hawthorne Street
San Francisco, California  94105

Mathew Rodriguez
Agency Secretary
California Environmental Protection Agency
1001 I Street
Sacramento, California  95812-2815

Debbie Raphael, Director
California Department of Toxic Substances Control
1001 I Street
Sacramento, California 95814-2828

Samuel Unger, Executive Officer
California Regional Water Quality Control Board, Los Angeles
320 West Fourth Street, Suite 200
Los Angeles, California 90013

Norman Rave
United States Department of Justice
Environment & Natural Resources Division
Post Office Box 23986
Washington, D.C. 20026-3986

MUSICK, PEELER & GARRETT LLP
ATTORNEYS AT LAW

Flask Chemical Corporation
May 7, 2012
Page 6

Jay Golida, Associate General Counsel
Los Angeles Unified School District
333 S. Beaudry Avenue, 23rd Floor
Los Angeles, California 90017

Steve Cooley, District Attorney
District Attorney's Office
County of Los Angeles
210 West Temple Street, Suite 18000
Los Angeles, California 90012-3210

Attorney General's Office
California Department of Justice
Attn: Kamala D. Harris, California Attorney General
Post Office Box 944255
Sacramento, California 94244-2550

791097.1

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent  ☐ Addressee

B. Received by ( Printed Name)  Ramiro Toro

C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

1. Article Addressed to:

Flask Chemical Corporation
c/o David F. Wood & Sheila Fix
Wood Smith Henning & Berman, LL
10960 Wilshire Blvd., 18th Flr
Los Angeles, CA 90024

3. Service Type
   ☐ Certified Mail   ☐ Express Mail
   ☐ Registered      ☐ Return Receipt for Merchandise
   ☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)

7011 3500 0003 3787 5761

PS Form 3811, February 2004         Domestic Return Receipt         102595-02-M-1540